**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
Brittany S. Scott (State Bar No. 327132)
28 Geary Str Suite 640 # 1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: 888-410-0415
E-Mail: yeremey@skclassactions.com
      brittany@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-4704
Facsimile: (888) 410-0415
E-Mail: joel@skclassactions.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHERINE SMET, on behalf of herself and all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| COMPOSTIC LIMITED, | <u>JURY TRIAL DEMANDED</u> |
| Defendant. | |

Plaintiff Katherine Smet ("Plaintiff"), on behalf of herself and all others similarly situated, brings this Class Action Complaint against Compostic Limited ("Compostic" or "Defendant"),[1] seeking monetary damages and other remedies.

## NATURE OF THE CASE

1.    "*The magic around the composting as an end of life is that you actually have a resource.  A really, really, valuable resource at the end of it that you can then put into our earth.  That's what our earth wants, you know*." – Jon Reed, CEO of Compostic Limited.

2.    In an effort to capitalize on reasonable consumers' desire for compostable products, Defendant manufactures, markets, and sells Compostic Cling Wrap (the "Product(s)"),[2] a line of food packaging products marketed as being compostable and sold to consumers throughout the United States, including the state of California.

3.    The Products prominently state in a uniform manner on the front label of the Product's packaging that they are "***100% home compostable***" (the "Compostable Representation") as shown in the image of the Product's packaging below:



4.    Reasonable consumers understand that a compostable product is one that is capable

---

[1] Plaintiff reserves the right to amend the Class Action Complaint to include any additional responsible parties or entities as evidence or information is uncovered throughout discovery.

[2] The "Products" include all sizes of Compostic Cling Wrap, including 50, 150, and 250 square foot containers.

of being broken down into non-toxic elements (compost) that are beneficial for soil and the environment in contrast to non-compostable alternatives that do not break down into useable compost, but instead, end up in landfills releasing toxic substances into the environment.

5.    Consequently, reasonable consumers including Plaintiff and Class Members expect that if they add the Products to compost, then that compost can be used as a beneficial resource for gardens or yards by mixing it with soil where plants will grow and if they otherwise dispose of the Products, they will ultimately breakdown into substances that are not harmful to the environment. In contrast, reasonable consumers do not expect the Products to render compost unusable or to be harmful to the environment.

6.    Defendant intentionally misleads consumers into believing the Products are compostable—that they are safe and suitable for their intended purpose of being used as compost and reduce the release of toxic substances into the environment. Defendant does this because consumers actively seek out compostable products that break down and can be introduced into the soil, rather than deposited in landfills.  These consumers are willing to pay more for such products, which often cost significantly more than non-compostable alternatives.

7.    Contrary to reasonable consumers' expectations, the Compostable Representation is deceptive and misleading because the Products contain polybutylene adipate terephthalate ("PBAT") and polylactic acid ("PLA")[3].  PBAT and PLA leave behind microplastics and chemicals such as Adipic Acid, 1,4-Butanediol, and Terephthalic Acid when it degrades.  ***Degradants from PBAT and PLA have been shown to inhibit plant growth, rendering any compost they are in unusable***, and the Compostable Representation false.

8.    As such, Defendant has engaged in widespread false and deceptive conduct by designing, marketing, manufacturing, distributing, and selling the Products with the uniform Compostable Representation.  Every package of the Products contains the Compostable Representation misleading reasonable consumers to believe the Products are compostable, when in fact they are not because they break down into microplastics and chemicals that inhibit plant

_____

[3] Notably, the Product is also not "100% home compostable" because PLA is not home compostable.

growth, making any compost they are added to unusable and harmful to the environment.

9.     Plaintiff and Class members purchased and paid a premium for the Products, which are designed, marketed, manufactured, distributed, and sold by Defendant.  Further, Plaintiff and Class members relied to their detriment on Defendant's Compostable Representation, when the Products are not in fact compostable.  Plaintiff and Class members would not have purchased the Products – or would not have paid as much as they did– had they known the Compostable Representation was false.  Thus, Plaintiff and Class Members suffered monetary damages as result of Defendant's deceptive and false representations.

10.     Plaintiff brings this action individually, and on behalf of similarly situated individuals who purchased the falsely and deceptively labeled Products for violations of California's Consumer Legal Remedies Act, Cal. Bus. & Prof. Code § 1750, *et seq.*; California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; California's Unfair Competition Act, Cal. Bus. & Prof. Code § 17200, *et seq.*, breach of express warranty, fraud, and unjust enrichment.

## **PARTIES**

### **Plaintiff**

11.     At all relevant times, Plaintiff Katherine Smet was and is a citizen and resident of Sacramento, California, who has an intent to remain there, and is therefore a domiciliary of California.

12.     In approximately January 2025, Plaintiff purchased the Product, (specifically, Compostic's Cling Wrap in the 150 square foot size) for a premium price of approximately $7.99 from Sacramento Natural Foods Co-op in Sacramento, California.

13.     Prior to her purchase of her Product, Plaintiff read and reviewed Defendant's Compostable Representation on the Product's labeling and packaging and specifically saw that her Product was labeled and marketed as "100% home compostable."

14.     The Compostable Representation was material to her purchasing decision.

15.     On the same packaging, Defendant failed to disclose clearly and conspicuously the material facts that, when broken down, the Product leaves behind microplastics and chemicals that have been shown to inhibit plant growth and are toxic to the environment, rendering any compost containing the Products unusable and not beneficial to the environment as expected by reasonable consumers, including Plaintiff, and the Compostable Representation false and misleading.

16.     Based on Defendant's Compostable Representation on the front label of the Product, which Plaintiff read, she reasonably believed that the Products would be compostable. She expected that if she added the Product to compost, then that compost could be used as a beneficial resource and that if she otherwise disposed of the Product, it would degrade into non-toxic substances, which not harm the environment. She did not expect the Products to render compost unusable or to be harmful to the environment.

17.     In reliance on Defendant's material Compostable Representation on the front label of the Product, Plaintiff purchased the Product and paid a premium price for the Product's compostable qualities.  Accordingly, the Compostable Representation was part of the basis of the bargain.

18.     Because Defendant unlawfully concealed material facts from Plaintiff before her purchase, she did not suspect (and had no reason to suspect) that the Product would not be compostable as represented.

19.     Had Plaintiff known that the Compostable Representation was false and misleading, Plaintiff would not have purchased the Product or would have paid substantially less for the Product.

20.     Plaintiff remains interested in purchasing cling wrap that is truly compostable and would consider purchasing the Products in the future if Defendant ensured the Compostable Representation was accurate and truthful.  However, she cannot know for certain whether the false labeling of the Products has been corrected.  The composition of the Products may change over time, but Plaintiff will be unable to rely on the Products' Compostable Representation in the future as she will not be able to determine whether the Products are truly compostable.

21.    As a result of Defendant's Compostable Representation on the front label of the Product, the Products were worth less than what Plaintiff paid.

22.    Plaintiff put Defendant on direct notice of her claims by certified letter dated November 17, 2025.

**Defendant**

23.    Defendant Compostic Limited is a New Zealand corporation with its principal place of business at 1.1/1 Cleveland Road, Parnell, Auckland, 1052, New Zealand. Defendant markets, sells, and distributes the Products throughout the United States, including in the State of California. Defendant manufactured, marketed, and sold the Product in the United States, including in the State of California during the class period beginning in 2023.

## JURISDICTION AND VENUE

24.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

25.    This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within California, such that Defendant has significant, continuous, and pervasive contracts with the State of California.

26.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant transacts significant business within this District and because Plaintiff purchased and used the Product in this District.

## FACTUAL ALLEGATIONS

I.    **"Compostable" Labeling**

27.    As a result of growing awareness of climate change, resource depletion, and environmental degradation, consumers increasingly seek out eco-friendly and sustainable products.

28.     As New Food Magazine reported in October 2025, "[t]he global eco-friendly food packaging market is on track for substantial growth over the next decade, fueled by heightened environmental awareness, regulatory pressure and consumer demand for sustainable alternatives."[4] Additionally,  North America is a leading market in sustainable food packaging given that it is "supported by strong environmental policies and consumer spending in the US."[5]

29.     One way consumers seek out eco-friendly and sustainable products is by purchasing products marketed as "compostable."

30.     Reasonable consumers concerned about sustainability and environmental impact shop for products labeled as "compostable" and pay a premium for that quality based in part on their trust of manufacturers, like Defendant, to label their products truthfully.

31.     In an effort to protect reasonable consumers from being duped by manufacturers, like Defendant, that do not follow through on their promises, the State of California, through California Business and Professions Code § 17580.5, makes it "unlawful for a person to make an untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied." Further, an "'environmental marketing claim' shall include any claim contained in the 'Guides for the Use of Environmental Marketing Claims' published by the Federal Trade Commission." *Id.*

32.     Under the "Guides for the Use of Environmental Marketing Claims" (the "Green Guides"), "[i]t is deceptive to misrepresent, directly or by implication, that a product or package is compostable."  16 C.F. R. 260.7(a).

33.     The Green Guides detail exactly what it means to be compostable: "[a] marketer claiming that an item is ***compostable should have competent and reliable scientific evidence that all the materials in the item will break down into, or otherwise become part of, usable compost*** (*e.g.*, soil-conditioning material, mulch)[.]"  16 C.F.R. 260.7(b) (emphasis added).

34.     This definition of "compostable" is consistent with reasonable consumer's expectations that a compostable product will break down into components that can become part of

---

[4] https://www.newfoodmagazine.com/news/256543/global-eco-friendly-food-packaging-market-set-for-rapid-growth-as-demand-for-sustainable-solutions-rises/ (last accessed February 16, 2026).
[5] *Id.*

usable compost, which can be introduced to soil and will not add toxic substances to the environment.  Further, reasonable consumers expect that products advertised, marketed, sold, labeled, and/or represented as compostable will break down into material suitable for use in soil, and will not introduce toxic chemicals into the soil.

35.    Moreover, the Green Guides provide concrete examples illustrating when a "compostable" claim is deceptive, including but not limited to the following examples:

> **Example 2:** A garden center sells grass clipping bags labeled as "Compostable in California Municipal Yard Trimmings Composting Facilities."  ***When the bags break down, however, they release toxins into the compost.  The claim is deceptive if the presence of these toxins prevents the compost from being usable.***

16 C.F.R. 260.7(d) (emphasis added).

36.    Indeed, Defendant acknowledges that the definition of compostable hinges on whether the product can break down into material that can actually be used in soil and that will not release toxic substances into the environment.  On June 5, 2023, the chief executive officer of Compostic, Jon Reed, stated ***"[t]he magic around the composting as an end of life is that you actually have a resource.***  A really, really, valuable resource at the end of it that you can then put into our earth.  That's what our earth wants, you know." – Jon Reed, CEO of Compostic Limited.

37.    Defendant knows reasonable consumers expect that products advertised, marketed, sold, labeled, and or represented as compostable will break down into material suitable for use in soil, and will not introduce toxic chemicals into the environment.  However, despite this knowledge, Defendant misrepresented the Products as compostable.

## II.    Defendant Misrepresents The Products Are "Compostable."

38.    Defendant falsely and misleadingly labels its Products as being compostable with its uniform Compostable Representation, "***100% home compostable,***" on the front label of the Product's packaging, as depicted above (*supra* ¶ 3) and below:



39.    The Compostable Representation is uniformly displayed on the front label of every Product's packaging.

40.    Defendant is well aware that the Compostable Representation is material to an ordinary and reasonable consumer in deciding what food storage products to purchase and deciding to pay more to purchase Defendant's Products compared to similar products without the Compostable Representation.

41.    The Compostable Representation on the Products' packaging, labeling, advertising, and marketing is conspicuous and designed to grab the consumer's attention.  Indeed, the Products prominently make the Compostable Representation on the front label and packaging.  Even further, the very name of the Product includes the Compostic Representation or an iteration of the Compostic Representation.

42.    In this way, Defendant's carefully designed its labels, advertising, packaging, and Products, including the placement of the Compostable Representation, to perpetuate the false notion that the Products are in fact "compostable."  Defendant intends that ordinary and reasonable

consumers viewing the Products will read the claim, understand the claim, and rely on the claim to make purchasing decisions.

**III.    Despite Defendant's Compostable Representation, The Products Are Not Compostable.**

43.    The Products contain PBAT and PLA.  PBAT is a thermoplastic synthesized from petrochemical (petroleum based) monomers adipic acid and butylene glycol and combined with terephthalic acid.  PLA is a bioplastic made of plant sugars.

44.    Even more problematic, PBAT is not compostable because it degrades into microplastics ("PBAT MPs") and its component parts Adipic Acid, 1,4-Butanediol, and Terephthalic Acid.  These degradants have been shown to inhibit plant growth, therefore rendering the compost unusable.

45.    In the study *Negative Effects of Poly(Butylene Adipate-Co-Terephthalate) Microplastics on Arabidopsis and its Root-Associated Microbiome*,[6] researchers reported that the degradants of PBAT had negative effects on plant growth.  When researchers tested the main degradation products of PBAT – adipic acid, terephthalic acid, and butanediol – they found these chemicals had an inhibitory effect on plant growth, including reducing the total leaf area, plant mass (shoot dry weight), and fruiting.  Similarly, PBAT MPs were found to significantly affect plant growth, including significantly decreasing leaf area by 40% and decreasing the shoot dry weight by 27%.

---

[6] Jiaxi Liu, et al., *Negative Effects of Poly(Butylene Adipate-Co-Terephthalate) Microplastics on Arabidopsis and its Root-Associated Microbiome*, Journal of Hazardous Materials, Volume 437, 2022.

46.    Photos demonstrating the effect of PBAT MPs are below:



47.    Similarly, the study *Biodegradable Polybutylene Adipate Terephthalate (PBAT) Microplastics Cause More Toxic Effects on Winter Wheat in the Presence of Trichoderma citrinoviride and 2,4-D than Low-Density Polyethylene (LDPE)*[7] reported that the germination rate decreased in plants grown in soil containing PBAT MPs.  Researchers further concluded that the presence of PBAT MPs had a detrimental effect on plan growth and physiology and disrupted beneficial interactions between plants and symbiotic microorganisms.  Additionally, the plants experienced a measurable increase in oxidative stress.

48.    In *Biodegradable PBAT Microplastics Adversely Affect Pakchoi (Brassica Chinensis L.) Growth and the Rhizosphere Ecology: Focusing on Rhizosphere Microbial Community Composition, Element Metabolic Potential, and Root Exudates*[8] researchers determined that plants grown in soil treated with PBAT MPs experienced a decrease in shoot length, weight,

---

[7] Jasińska, A., et al., *Biodegradable Polybutylene Adipate Terephthalate (PBAT) Microplastics Cause More Toxic Effects on Winter Wheat in the Presence of Trichoderma Citrinoviride and 2,4-D than Low-Density Polyethylene (LDPE)*, Agronomy 2026, 16, 182.

[8] Han Y, et al., *Biodegradable PBAT Microplastics Adversely Affect Pakchoi (Brassica Chinensis L.) Growth and the Rhizosphere Ecology: Focusing On Rhizosphere Microbial Community Composition, Element Metabolic Potential, and Root Exudates*. Sci Total Environ. 2024 Feb 20; 912:169048.

and chlorophyll content.  Further, soil containing PBAT MPs showed increased levels of microorganisms that are negatively related to plant growth.

49.    Moreover, these are just some of the studies finding that PBAT degradants have a negative, or toxic, effect on plants.  For example, *PBAT Is Biodegradable But What About the Toxicity of its Biodegradation Products?*,[9] showed that metabolites (byproducts) of PBAT produced during microbial decomposition were toxic and may even be more toxic to plants and symbiotic microorganisms than the parent polymer.   And, *Effect of PBAT Biodegradable Mulch Film Extract on Seed Germination and Seedlings Metabolism of Tobacco*,[10] found that organic compounds extracted from PBAT biodegradable mulch film significantly inhibited tobacco seedling growth, delaying germination and reducing root length and shoot height, while metabolomic analysis showed that these extracts disrupted carbon and nitrogen metabolism by up-regulating soluble sugars, organic acids, and biogenic amines and down-regulating alkaloid synthesis.

50.    PLA has similarly been found to have a negative effect on plants.  For example, in *Effect of Polylactic Acid Microplastics on Soil Properties, Soil Microbials and Plant Growth*[11], researchers found that PLA microplastics ("PLA MPs") in soil had a negative impact on soil characteristics, soil microbials, and plant growth.  In *Unveiling the Detrimental Effects of Polylactic Acid Microplastics on Rice Seedlings and Soil Health*,[12] researchers reported that PLA MPs adversely effected photosynthesis, plant growth, root and shoot dry weights, and chlorophyll content of plants, as well as adversely effects on the soil itself.  Moreover, PLA can only be

---

[9] Martínez, A., et al., *PBAT Is Biodegradable But What About the Toxicity of its Biodegradation Products?[9]* J. Mol. Model. 2024, 30, 273.

[10] Gao, W., et al., *Effect of PBAT Biodegradable Mulch Film Extract on Seed Germination and Seedlings Metabolism of Tobacco*. Agriculture 2022, 12, 1553.

[11] Run Liu, et al., *Effect of Polylactic Acid Microplastics on Soil Properties, Soil Microbials and Plant Growth*, Chemosphere, Volume 329, 2023.

[12] Muhammad Kashif Irshad, et al., *Unveiling the Detrimental Effects of Polylactic Acid Microplastics on Rice Seedlings and Soil Health*, Chemosphere, Volume 355, 2024.

processed industrially because it requires high-temperature conditions that cannot be found in nature.

51.    Given that Products are made of PBAT and PLA, which break down into toxic degradants and actively inhibit plant growth, the Product is incapable of complying with the Compostable Representation, which is false and misleading.

## IV.    The Compostable Representation Harms Consumers.

52.    Plaintiff and Class members purchased and paid a premium for the Products in reliance on the Compostable Representation, reasonably believing the Products were compostable.

53.    Plaintiff's and Class members' reasonable belief that the Products were compostable was a significant and material factor in their decisions to purchase the and paid a premium for the Products.

54.    At the time of purchase, Plaintiff and Class members did not know, and had no reason to know, that the Products were not compostable because of how the Products are deceptively labeled and advertised including the Compostable Representation to create the impression that the Products are suitable for composting and will not be harmful to the environment.  Nothing on the Products' labeling indicates the Products would not be compostable as promised.

55.    At the time of purchase, Defendant knew that the Products were not compostable and thus, incapable of complying with the Compostable Representation.

56.    Defendant knew that Plaintiff and Class members would rely on the Compostable Representation and would therefore, reasonably believe the Products are compostable.

57.     Because of the Compostable Representation, Plaintiff and Class Members were induced to make purchases they otherwise would not have, but for the belief that the Products are compostable.

58.     Plaintiff and Class members would not have purchased the Products had they known that the Products are not compostable.

59.     Plaintiff and Class members paid a price premium for the Products because of the Compostable Representation.

60.     Therefore, Plaintiff and Class members suffered an injury in fact and lost money as a result of Defendant's false and misleading Compostable Representation.

## V.     <u>NO ADEQUATE REMEDY AT LAW</u>

61.     Plaintiff and members of the California Subclass are entitled to equitable relief as no adequate remedy at law exists.

62.     **Broader Statues of Limitations.**  The statutes of limitations for the causes of action pled herein vary.  The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA.  Thus, without application of tolling, California Subclass Members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.  Similarly, California Subclass Members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty or fraud will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

63.     **More Prompt, Certain, and Efficient.**  Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Legal claims for damages are not equally certain as restitution because claims under the UCL and other equitable claims entail few elements.

64.     **Broader Scope of Conduct.**  In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein.  It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with

the Compostable Representation, including the Products' label and packaging, over a long period

of time, in order to gain an unfair advantage over competitor products and to take advantage of

consumers' desire for products that comport with the Compostable Representation.  The UCL also

creates a cause of action for violations of law (such as statutory or regulatory requirements and

court orders related to similar representations and omissions made on the type of products at issue).

Thus, Plaintiff and the California Subclass may be entitled to restitution under the UCL, while not

entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or

constructive knowledge of the falsity; the CLRA is limited to certain types of Plaintiff (an

individual who seeks or acquires, by purchase or lease, any goods or services for personal, family,

or household purposes) and other statutorily enumerated conduct; common law fraud claims

require a showing of actual deception or reliance).

       65.    **Injunctive Relief to Cease Misconduct and Dispel Misperception.**  Injunctive

relief is appropriate on behalf of Plaintiff and the California Subclass because Defendant continues

to misrepresent the Products with the Compostable Representation.  Injunctive relief is necessary to

prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct

described herein and to prevent future harm - none of which can be achieved through available

legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in

the form of removing the Compostable Representation is necessary to dispel the public

misperception about the Products that has resulted from years of Defendant's unfair, fraudulent,

and unlawful marketing efforts.  An injunction requiring removal of the claim will prevent the

ongoing deception and repeat purchases based thereon.  It is also not available through a legal

remedy (such as monetary damages).  In addition, injunctive relief is necessary because, because

discovery and Plaintiff's investigation has not yet completed.  Moreover, example, because the

court has not yet certified any class, the following remains unknown: the scope of the class, the

identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

66.    **Public Injunction.**  Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

67.    **Procedural Posture - Incomplete Discovery & Pre-Certification.**  Lastly, this is an initial pleading in this action, and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet.  No expert discovery has commenced and/or completed.  The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves the right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass.  Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

**Discovery Rule**

68.    Plaintiff and Class Members did not discover and could not have discovered through reasonable diligence that its Products were not compostable as represented and warranted within the time-period of any applicable statutes of limitation.  There is no evidence that Plaintiff was aware that the Products were not compostable as represented and warranted as promised by Defendant.

69.    Defendant misrepresented the Products as compostable with the Compostable Representation.  Defendant concealed that its Products were not compostable as represented and warranted.  Plaintiff and other Class Members could not have reasonably discovered and could not have known of facts that would have caused a reasonable person to suspect that Defendant knowingly failed to disclose material information within its knowledge about its Products.

70.     As such, no potentially relevant statute of limitations should be applied.

**Fraudulent Concealment**

71.     Any applicable statutes of limitation have been tolled by Defendant's knowing, active and ongoing concealment and denial of the facts throughout the time period relevant to this action as alleged herein.

72.     Defendant were, and are, under a continuous duty to disclose to Plaintiff and the Class the true character, quality, and nature of the Products, particularly with respect to whether they are compostable as represented and warranted.

73.     At all relevant times, Defendant knowingly, affirmatively and actively misrepresented and concealed the true character, quality, and nature of the Products and sold the Products into the stream of commerce with the Compostable Representation.  As a result, neither Plaintiff nor the other Class Members could have discovered the true character, quality, and nature of the Products, even upon reasonable exercise of due diligence.

74.     Throughout the Class Period, at all relevant times, Defendant has known that the Products, which they designed, manufactured, selected materials for and sold, were not compostable as represented and warranted.

75.     Defendant's actual knowledge of the serious safety concerns surrounding the Products is evidenced by, among other things, Defendant's design, manufacture, and sale of the Products and testing of the Products for internal and certification purposes.  Despite this knowledge, Defendant failed to disclose and instead, concealed material information from Plaintiff and other Class Members, including that the Products are not compostable despite the Compostable Representation, even though, at any point in time, Defendant could have disclosed this material information through a recall, individual correspondence, media release, or by other means.

76.     Instead, Defendant continued to market the Products as compostable with the Compostable Representation.  The purpose of this concealment was to continue to profit from the sale of its popular Products and to prevent Plaintiff and other Class Members from seeking redress.

77.     Plaintiff and the other Class Members justifiably relied on Defendant to disclose the true nature of the Products they purchased and/or owned because their true nature regarding whether they were compostable as represented and warranted was not discoverable by Plaintiff and the other Class Members through reasonable efforts.

78.     Any applicable statute of limitations has been tolled by Defendant's knowledge, active concealment, and denial of the facts alleged herein, which is ongoing.

**Estoppel**

79.     Defendant was, and are, under a continuing duty to disclose to Plaintiff and the Class the true character, quality, and nature of the Products, namely whether they are compostable as represented.

80.     Defendant knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Products.  Plaintiff and the Class reasonably relied on Defendant's Compostable Representation.

81.     For these reasons, Defendant is estopped from relying on any statute of limitations in defense of this action.

82.     Additionally, Defendant is estopped from raising any defense of laches due to its own conduct as alleged herein.

## FED. R. CIV. P. 9(b) ALLEGATIONS

### *(Affirmative and By Omission)*

83.     Although Defendant is in the best position to know what content it placed in its marketing materials during the relevant timeframe, and the knowledge that it had regarding the true nature of the Products and specifically, whether the Products were compostable, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

84.     **Who**: Defendant engaged in the deceptive and fraudulent conduct through its Compostable Representation on the Product's packaging and labeling, and marketing materials, in written form.

85.    **What**: Defendant's conduct here through its Compostable Representation, was and continues to be fraudulent.  Defendant's conduct is deceptive because it uniformly misrepresented the Products as "compostable," while omitting and concealing that the Products are not compostable for the reasons stated in Section III, which is in direct conflict with the Compostable Representation and the expectations of reasonable consumers including Plaintiff and Class Members.  Defendant's conduct deceived Plaintiff and the Class into believing that the Products were compostable. Defendant knew, or should have known, that this information is material to reasonable consumers, including Plaintiff and the Class, in making their purchasing decisions.  However, Defendant omitted and concealed necessary information that the Products are not compostable.  No reasonable consumer would expect that the Products, marketed as "compostable" would not be compostable.

86.    **When**: Defendant made the Compostable Representation on the Products, detailed herein, during the class period and prior to and at the point of sale, leaving Plaintiff and the Class unaware of the true nature of the Products prior to purchasing and paying a premium for them.

87.    **Where**: Defendant's Compostable Representation was made on the Products' packaging and labeling, and marketing materials, through employees, and through authorized retailers as well as in the name of the Products.

88.    **How**: Defendant disseminated its Compostable Representation in written and electronic form, or conventional hardcopy form, as well as verbally through statements made by its employees and authorized retailers.

89.    **Why**: Defendant made the Compostable Representation for the express purpose of inducing Plaintiff and the Class to rely on it in purchase the Products, the effect of which was that Defendant profited by selling the Products to many thousands of consumers.

90.    **Injury**: Plaintiff and the Class purchased, paid a premium, or otherwise paid more for the Products when they otherwise would not have absent the Compostable Representation.

## CLASS ALLEGATIONS

91.    ***Class Definition***: Plaintiff brings this action on behalf all people in the following classes and subclasses (collectively referred to as "Class Members"):

**Nationwide Class**: all people in the United States who purchased the Product for personal or household use during the last four years.

**California Subclass**: all people in California who purchased the Product for personal or household use during the last four years.

92.     Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

93.     Specifically excluded from the putative classes are Defendant and any entities in which Defendant have a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

94.     ***Numerosity***. Class Members are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to the Plaintiff at this time but may be determined through discovery.  Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, its agents, or other means.

95.     ***Commonality and Predominance***. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

        (a)     Whether Defendant misrepresented and/or failed to disclose material facts concerning the Product;

        (b)     Whether the omissions and representations on the Product's label, the Product's marketing materials, or any single omission or representation, is false, misleading, and/or deceptive;

        (c)     Whether Defendant's conduct in advertising and selling the Product amounted to unlawful, unfair, and/or deceptive business practices;

(d)    Whether Defendant breached an express and/or implied warranty created through the labeling and marketing of its Product;

(e)    Whether Plaintiff and the Class Members are entitled to equitable and/or injunctive relief;

(f)    Whether Plaintiff and the Class Members have sustained damage as a result of Defendant's unlawful conduct;

(g)    The proper measure of damages sustained by Plaintiff and the Class Members; and

(h)    Whether Defendant was unjustly enriched by their unlawful practices.

96.    **Typicality**. The claims of the Plaintiff are typical of the claims of the Class Members in that Plaintiff and the Class Members sustained damages as a result of Defendant's uniform wrongful conduct, as alleged above.

97.    **Adequacy**. Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the classes. Plaintiff has no interests that are antagonistic to those of the Class Members. Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed Class Members.

98.    **Superiority**. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for Class Members; the Class Members are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

99.    Defendant has acted or failed to act on grounds generally applicable to the Class Members, thereby making appropriate final injunctive relief with respect to the Class Members as a whole.

100.    Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiff and Class Members and will likely retain the benefits of its wrongdoing.

**COUNT I**
**Violation of California's Consumer Legal Remedies Act**
**Cal. Bus. & Prof. Code § 1750, *et seq.***
**(On Behalf of the California Subclass)**

101.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

102.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

103.    Plaintiff and the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

104.    Plaintiff, Class Members, and Defendant have engaged in "transactions" as that term is defined by California Civil Code § 1761(e).

105.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

106.    As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiff and the other Class Members that the Products are compostable when in fact the Products are not compostable because they will not break down into usable compost and instead, break down into toxic chemical harmful to the environment.

107.    As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

108.    Defendant's Compostable Representation was likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

109.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw,

read, and reasonably relied on them when purchasing Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

110.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

111.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the California Subclass.

112.    Plaintiff and the California Subclass were injured as a direct and proximate result of Defendant's conduct because (1) they would not have purchased the Products if they had known that the Products were not compostable; and (2) they overpaid for the Products because the products are sold at a price premium due to Defendant's misrepresentations.

113.    Accordingly, Plaintiff, on behalf of herself and all other members of the California Subclass, seeks damages and to enjoin the unlawful acts and practices described herein.

114.    On November 17, 2025, a CLRA demand letter was sent to Defendant's headquarters and registered agent, via certified mail with return receipt requested. This letter provided notice of Defendant's violation of the CLRA, for Plaintiff and the class, and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged herein.

## COUNT II
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf of the California Subclass)**

115.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

116.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

117.    Defendant's acts and practices, as described above, have deceived and are likely to continue to deceive Class Members and the public. As described throughout this Complaint, Defendant misrepresented the Products as being compostable. By its actions, Defendant disseminated uniform advertising regarding the Products to and across California and the United

States.  The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code §§ 17500, *et seq.*  Such advertisements were intended to – and likely did – deceive the consuming public.

118.    The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant represented that the Products were compostable, when in fact the Products are not compostable because they will not break down into usable compost and instead, break down into toxic chemicals harmful to the environment.

119.    In making and disseminating these statements, Defendant knew, or reasonably should have known, that its advertisements were untrue and misleading in violation of California law.  Plaintiff and the California Subclass based their purchasing decision on Defendant's Compostable Representation.  Plaintiff and the California Subclass were injured in fact and lost money as a result.

120.    The misrepresentations by Defendant about the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

121.    As a result of Defendant's wrongful conduct, Plaintiff and the Class Members lost money in an amount to be proven at trial.  Plaintiff and the Class Members are therefore entitled to restitution as appropriate for this cause of action.

122.    Plaintiff seeks all available relief under the FAL.

**COUNT III**
**Violation of California's Unfair Competition Act**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of the California Subclass)**

123.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

124.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

125.    California Business and Professions Code § 17200 prohibits "any unlawful, unfair,

or fraudulent business act or practice." For the reasons discussed above, Defendant has engaged unlawful, unfair, and fraudulent business acts or practices in violation of California Business and Professions Code § 17200.

126. Defendant has violated the UCL by engaging in unlawful business practices by violating the CLRA, Cal. Civ. Code §§ 1770 (a)(5), (a)(7), and (a)(9), by violating California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, by violating California's Business and Professional Code § 17580.5, and by violating the common law by, inter alia, making false representations and warranties concerning the Products and retaining the unlawfully obtained benefit therefrom. Plaintiff reserves the right to allege additional violations of law which constitute other unlawful business acts or practices.

127. Defendant has also violated the UCL's prohibition on unfair business practices because its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

128. There were reasonably available alternatives to further Defendant's legitimate business interest other than by engaging in the conduct described above.

129. Defendant has further violated the UCL's prohibition on fraudulent business practices by making knowingly, or that which Defendant reasonably should know, false and misleading representations and warranties about its Products which were likely to deceive the consuming public within the meaning of Bus. & Prof. Code § 17200.

130. Plaintiff and the California Subclass suffered a substantial injury by virtue of buying Products they would not have purchased absent Defendant's unlawful, unfair, and fraudulent marketing and advertising about the capability of its Products.

131. There is no benefit to consumers or competition from marketing claiming that the Products were compostable when they were not.

132. Plaintiff and the California Subclass had no way of reasonably knowing that the Products they purchased was not marketed, packaged, or labeled accurately. Thus, they could not

1    have reasonably avoided the injury each of them suffered.

2        133.    The gravity of the consequences of Defendant's conduct as described outweighs any

3    justification, motive, or reason therefore, particularly considering the available legal alternatives

4    which exist in the marketplace.  Such conduct is immoral, unethical, unscrupulous, offends

5    established public policy, or is substantially injurious to Plaintiff and the California Subclass.

6        134.    Plaintiff seeks all available relief under the UCL.

7                                    **COUNT IV**
                              **Breach of Express Warranty**
8                          **(On Behalf of the Class and Subclass)**

9        135.    Plaintiff incorporates by reference the allegations contained in all preceding

10   paragraphs of this complaint.

11       136.    Plaintiff brings this claim individually and on behalf of the members of the

12   proposed Class and Subclass against Defendant.

13       137.    As the designer, manufacturer, marketer, distributor, and/or seller of the Product,

14   Defendant issued an express warranty by representing to consumers at the point of purchase that

15   the Products were compostable.

16       138.    Defendant's representations were part of the description of the Products and the

17   bargain upon which the Products were offered for sale and purchased by Plaintiff and Class

18   Members who reasonably relied on those representations.

19       139.    In fact, the Products do not conform to the above-referenced representation because,

20   as alleged in detail above, the Products will not break down into usable compost and instead, break

21   down into toxic chemicals harmful to the environment.  Thus, the warranty was breached.

22       140.    On November 17, 2025, prior to the filing of this Complaint, Plaintiff's counsel sent

23   Defendant a warranty notice letter that complied in all respects with U.C.C. 2-607.  The letter

24   provided notice of breach of express warranty.  The letter was sent via certified mail with return

25   receipt to Defendant advising Defendant that it was in violation of the U.C.C. 2-607 and state

26   consumer protection laws and demanding that it cease and desist from such violations and make

27   full restitution by refunding the monies received therefrom.  The letter stated that it was sent on

28

1    behalf of Plaintiff and all other similarly situated purchasers.

2        141.    As a direct and proximate results of Defendant's breach, Plaintiff and Class

3    Members were injured because they: (1) paid money for Products that were not as Defendant

4    represented; (2) were deprived of the benefit of the bargain because the Products they purchased

5    were different than Defendant advertised; and (3) were deprived of the benefit of the bargain

6    because the Products they purchased had less value than Defendant represented.  Had Defendant

7    not breached the express warranty by making the false Compostable Representation alleged herein,

8    Plaintiff and Class Members would not have purchased the Products or would not have paid as

9    much as they did for them.

10        142.    Plaintiff seeks all available relief under this cause of action.

11                              **COUNT V**
                              **Unjust Enrichment**
12                  **(On Behalf of the California Subclass)**

13        143.    Plaintiff incorporates by reference the allegations contained in all preceding

14    paragraphs of this complaint.

15        144.    Plaintiff brings this claim individually and on behalf of the members of the

16    proposed California Subclass against Defendant.

17        145.    To the extent required by law, Plaintiff alternatively styles this cause of action as a

18    quasi-contract claim seeking restitution.

19        146.    Plaintiff and the California Subclass conferred benefits on Defendant by purchasing

20    the Products.

21        147.    Defendant has been unjustly enriched in retaining the revenues derived from the

22    California Subclasses' purchases of the Products.  Retention of those monies under these

23    circumstances is unjust and inequitable because Defendant warranted that the Products were

24    compostable when, in fact, they will not break down into usable compost and instead, break down

25    into toxic chemicals harmful to the environment.  Defendant's misrepresentations caused injuries

26    to Plaintiff and the California Subclass because they would not have purchased the Products if the

27    true facts were known.

28

148.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the California Subclass is unjust and inequitable, Defendant must pay restitution to Plaintiff and the California Subclass for its unjust enrichment, as ordered by the Court.

149.    Plaintiff and the California Subclass have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.  They lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

**COUNT VI**
**Fraud**
**(On Behalf of the Class and California Subclass)**

150.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

151.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendant.

152.    As discussed above, Defendant provided Plaintiff and Class and Subclass members with false or misleading material information about the Products, including but not limited to the fact that the Products were compostable.

153.    These misrepresentations were made with knowledge of their falsehood.

154.    The misrepresentations made by Defendant, upon which Plaintiff and Class and Subclass members reasonably and justifiably relied, were intended to induce, and actually induced Plaintiff and Class and Subclass members to purchase the Product.

155.    The fraudulent actions of Defendant caused damage to Plaintiff and Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.    For an order certifying the classes, naming Plaintiff as the representative of the classes, and naming Plaintiff's attorneys as Class Counsel to represent the classes;

b.  For an order declaring Defendant's conduct violates the statutes referenced herein;

c.  For an order finding in favor of Plaintiff and the classes on all counts asserted herein;

d.  For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an order of restitution and all other forms of equitable monetary relief;

g.  For injunctive relief as pleaded or as the Court may deem proper; and

h.  For an order awarding Plaintiff and the classes their reasonable attorney fees, expenses, and costs of suit.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated:  March 4, 2026

Respectfully submitted,

*/s/ Brittany S. Scott*

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (State Bar No. 295032)
Brittany S. Scott (State Bar No. 327132)
28 Geary Str Suite 640 # 1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: 888-410-0415
E-Mail: yeremey@skclassactions.com
        brittany@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-4704
Facsimile: (888) 410-0415
E-Mail: joel@skclassactions.com

*Attorneys for Plaintiff*

## **CLRA Venue Declaration, Civil Code § 1780(c)**

I, Brittany S. Scott, declare as follows:

1.      I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify hereto.

2.      I am the attorney for Plaintiff in the above-captioned action.

3.      I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*

4.      The Class Action Complaint has been filed in the proper place for trial of this action.

5.      It is my understanding that Defendant regularly transacts business in this County, and the acts and omissions giving rise to this action occurred in large part in this County.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.  Executed on March 4, 2026 in Oakland, CA.

By:  _/s/ Brittany S. Scott_
Brittany S. Scott